UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
Patrick M. McDermott,

                              Plaintiff,

                                                              OPINION & ORDER

          -against-
                                                              10 Civ. 2029 (HB)

New York City Housing Development Corp.,

                              Defendant.
-------------------------------------------------------------X

**Hon. HAROLD BAER, JR., District Judge:**

          Plaintiff in this employment discrimination case alleges that he was fired because of his prostate cancer and his age.  He brings his claims under the Americans with Disabilities Act of 1990, 42 U.S.C. 12-112 et seq. ("ADA"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 et seq. ("ADEA"), the New York State Human Rights Law, NY Executive Law §§ 290, et seq. ("State HRL"), and the New York City Human Rights Law, NYC Administrative Code §§ 8-101, et seq, ("City HRL").  Defendant now moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.  For the reasons that follow, the motion is GRANTED.

## FACTUAL BACKGROUND[1]

          Defendant New York City Housing Development Corporation ("HDC") is a public benefit corporation that finances affordable housing by issuing bonds.  Plaintiff Patrick Michael McDermott was hired by HDC on July 7, 2008 as Director of Communications.  Compl. ¶ 4; Pl's. Resp. Def. Statement of Undisputed Facts Pursuant to Local Rule 56.1 ("Pl's. 56.1 Resp.") ¶ 3; Def's. Statement of Undisputed Facts Pursuant to Local Rule 56.1 ("Def's 56.1") ¶ 3.  When he applied for the position, McDermott interviewed with Mary McConnell, Vice President of Human Resources, Mathew Wambua, Executive Vice President, and Marc Jahr, President of HDC.  Pl's. 56.1 Resp. ¶¶ 8-15.  After he was hired these were the primary people with whom McDermott worked, and the primary people responsible for his termination on November 18, 2008.  Pl's. 56.1 Resp. ¶¶ 15-16, 29-30, 52; Compl. ¶ 8.

---

[1] The following facts are undisputed except where otherwise noted.

McDermott was 63 years-old at the time he was hired, and had already been diagnosed with prostate cancer.  Compl. ¶ 4; Pl's. 56.1 ¶ 3.  The cancer's only symptom was frequent urination, which did not affect his job performance or daily life.  Pl's. 56.1Resp. ¶¶ 20-22.  However, while he recovered from a related operation performed on October 6, 2008, McDermott was allowed to work from home.  This was permitted because he had not yet worked long enough to accumulate leave time.  Pl's. 56.1Resp. ¶¶ 23-31; Def's 56.1¶¶ 23-31.  After the period during which he worked from home, McDermott was reimbursed for the expenses of driving to work and parking rather than using public transit, so that he could readjust to commuting in consideration of his medical condition.   Pl's. 56.1Resp. ¶¶ 32-33, 46.  During his employment, no one ever made comments to him that he felt were offensive or derogatory because of his age or disability and he never felt discriminated against until his termination. Pl's. 56.1Resp. ¶¶ 46, 50.

The stated reasons for terminating McDermott came in a letter of termination that cited "a lack of attention to detail, an inability to satisfactorily complete assignments, and ineffectiveness in managing the responsibilities and personnel of his department."  Pl's. 56.1Resp. ¶¶ 52-53; Def's 56.1¶¶ 52-53.  McDermott's supervisor, Wambua, testified that he began to have doubts about McDermott's performance soon after hiring him and  began to consider termination about halfway through his tenure.  Wambua, in consultation with McConnell, decided to terminate McDermott around the time of his leave of absence, but did not do so until later, in order not to jeopardize McDermott's medical insurance coverage.  Pl's. 56.1Resp. ¶¶ 54-58.

Wambua specifically cited McDermott's failure to remember pre-arranged meetings, failure to meet deadlines for memoranda, failure to meet quality of work standards, and failure to inform certain people of his leave of absence; the "catalytic" error that led to McDermott's termination concerned his failure to properly note the start time of a public relations event, which caused HDC's President, Jahr, to arrive late for the event.  Pl's. 56.1Resp. ¶¶ 58-100; Def's 56.1¶¶ 58-100.  The event was a photo opportunity at the "Big Six" housing development in Queens and was attended by Congressman Joseph Crowley and "VIPs from NY State Senate, NY State Assembly, NY City Council and the AFL-CIO Housing Investment Trust."  Perry Decl. Ex., L. Jahr's failure to arrive on time was considered to "reflect[] poorly on HDC and on its President."  *Id.*, Ex. H.  McDermott denies that the reasons given in the letter of termination

are true and disputes the validity of the grounds for termination, claiming he performed as expected.  Compl. ¶ 9; Pl's. 56.1Resp. ¶¶ 20-33, 58-100.

HDC replaced McDermott with Catie Marshall (Marshall), who was 53 at the time she was hired on December 1, 2008.  Compl. ¶ 10.  She was hired as a joint employee of HDC and the Department of Housing Preservation and Development because she could fill the same roll for both departments and thus save considerable expenses.  Pl's. 56.1Resp. ¶¶ 100-14; Def's 56.1¶¶ 100-14.  Marshall had previously held several public affairs positions with the City of New York and Jahr testified that he regarded her as highly experienced.  Pl's. 56.1Resp. ¶¶ 105, 112-13; Def's 56.1¶¶ 105, 112-113.

On March 20, 2009, McDermott filed a charge with the NYC Equal Employment Opportunity Commission, which issued a Notice of Right to Sue letter on December 16, 2009. Compl. ¶¶ 13-14. McDermott filed the present action in this Court on March 10, 2010.

## DISCUSSION

Summary judgment is warranted if the moving party shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009); Fed. R. Civ. P. 56(c).  A material fact is one that "might affect the outcome of the suit under the governing law."  *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (citation omitted).   The party opposing the motion "may not rest upon the mere allegations or denials of the adverse party's pleading, but…must set forth specific facts showing that there is a genuine issue for trial."  *Sista v. CDC Ixis North America, Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).

At summary judgment, claims of employment discrimination brought under the State HRL and the City HRL are analyzed under the same *McDonnell Douglas* burden shifting framework as federal discrimination claims.  *See, e.g.*, *Mack v. Otis Elevator*, 326 F.3d 116, 122 n.2 (2d Cir. 2003) (citation omitted).  Under *McDonnell Douglas,* the plaintiff bears the initial burden of establishing a prima facie case of discrimination.  If the plaintiff does so, the burden of going forward shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its action.  Once such a reason is provided, the plaintiff to prevail must show that the employer's reason was pretextual and its employment determination was in fact founded on discrimination. *See Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010).  "[I]t is important to note  ... that although the *McDonnell Douglas* presumption shifts the burden of *production* to the

defendant, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507 (1993).

**I.    McDermott's disability discrimination fails as a matter of law.**

      **A.  Applicable legal standards**

To sustain his claim for disability discrimination under the ADA, McDermott must show that: (1) his employer is subject to the ADA; (2) he suffers from a disability within the meaning of the ADA;[2] (3) he could perform the essential functions of his job with or without reasonable accommodation; and (4) he suffered an adverse employment action because of his disability. *Sista*, 445 F.3d at 169-70.  State HRL claims are subject to the same analysis.  *See Kinneary v. City of New York*, 601 F.3d 151, 158 (2d Cir. 2010).

For purposes of this motion, HDC concedes two elements: that it is subject to the anti-discrimination statutes pleaded and that McDermott could perform the essential functions of his job with or without a reasonable accommodation.  Def. Mem. Supp. Summ. J. at 4.  I need not address whether McDermott suffers from a disability because HDC is entitled to judgment as a matter of law on that element of McDermott's prima facie case that requires that the adverse employment action was on account of his disability.

      **B.  McDermott fails to show a causal relationship between his termination and his disability**

To prevail on this element, McDermott must show that his termination occurred under circumstances that give rise to an inference of discriminatory intent.  *See, e.g.*, *Primmer v. CBS Studios, Inc.*, 667 F. Supp. 2d 248, 259 (S.D.N.Y. 2009).  Put another way, "a plaintiff cannot simply rely on the fact that he was terminated. Rather, he must point to facts that suggest the termination was motivated, at least in part, by animus based on his alleged disability."  See *Vinokur v. Sovereign Bank*, 701 F. Supp. 2d 276, 291 (S.D.N.Y. March 22, 2010) (NYSHRL and

---

[2] The 2008 Americans with Disabilities Amendments Act expanded the scope of what constitutes a "disability" under the ADA.  *See Rohr v. Salt River Project Agricultural Imp. and Power Dist.*, 555 F.3d 850, 860-61 (9th Cir. 2009); 2008, Pub.L. No. 110-325, 122 Stat. 3553.  The amendments became effective January 1, 2009, and do not apply retroactively.  *See id*; 122 Stat. at 3559.  *See also Primmer v. CBS Studios, Inc.*, 667 F. Supp. 2d 248, 257 n.5 (S.D.N.Y. 2009).  The termination in this case occurred on November 18, 2008.  Pl. 56.1 ¶ 18, and is therefore analyzed under the pre-amendment statute.

NYCHRL claims); *Lama v. Consolidated Edison Co.,* No. 98 Civ. 5084 (JG), 1999 WL 997279, at *2 (E.D.N.Y. Oct. 18, 1999) (ADA claim).

Viewed in the light most favorable to McDermott, no evidence supports an inference of any discrimination based on McDermott's disability.  The section of his brief claiming that his termination was related to his disability is devoted entirely to explaining why the Big Six event was not his fault, and should not have been the "catalytic" reason for his termination.  *See* Def. Mem. Opp. Summ. J. at 8-10.   The problem with the Big Six event was that he provided Defendant's staff, including its President Marc Jahr, with the incorrect start time, which resulted in them being an hour late.  McDermott Decl. ¶ 25, Ex. 40.  McDermott submits testimony supporting his assertion that his supervisor Wambua was unsympathetic to the fact that he had been on medical leave prior to and during the Big Six event and may not have been privy to subsequent changes in the Big Six start time.  *See* Wambua Dep., 100:1-9 ("I really don't know what the last information Mr. McDermott had. I know [w]hat Mr. McDermott as director of communications was charged with, and that is to coordinate public events and to ensure the timely delivery of our principal to those public events and that didn't happen.").  McDermott also points out that Wambua could have ensured that the misinformation was corrected, and the problem avoided.  *See* Burke Decl., Ex. 16.  Finally, McDermott points to evidence indicating that Jahr was aware that McDermott was on medical leave.  Wambua Dep. 101:10-15.

None of these facts can be stretched to support even the slightest inference that McDermott's termination was motivated by discriminatory animus.  They indicate no connection between McDermott's claimed disability and his termination.  They may support McDermott's argument that his termination was unfair and that the criticisms of his  job performance were unfounded, but it is not my role to second guess an employer's personnel decisions, even if foolish, so long as they are non-discriminatory.  *Seils v. Rochester City Sch. Dist.*, 192 F. Supp. 2d 100, 111 (W.D.N.Y. 2002).  *See also Montana v. First Fed. Savings and Loan Ass'n of Rochester,* 869 F.2d 100, 106 (2d Cir.1989) (federal courts do not have a "roving commission to review business judgments"); *Meiri v. Dacon,* 759 F.2d 989, 995 (2d Cir. 1985) (courts "must refrain from intruding into an employer's policy apparatus or second-guessing a business's decision-making process"), *cert. denied,* 474 U.S. 829.

McDermott testified that he experienced no discrimination based on his disability prior to his termination on November 18, 2008.  McDermott Dep. at 64:9-12.  When asked at deposition

how HDC's conduct was discriminatory, McDermott merely testified: "I obviously had a medical condition.  If [Marshall, my replacement] was qualified in any other way and did not have a medical condition, then she would be one up on me."  McDermott Dep. 68:8-10.  This is a mere allegation resting on no supporting fact.  *See Sista*, 445 F.3d at 169.

McDermott has offered no evidence of "actions or remarks made by decision makers that could be viewed as reflecting a discriminatory animus, [nor] preferential treatment given to employees outside the protected class."  *Chertkova v. Connecticut General Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996).  He presents allegations and denials of HDC's motion, but no "specific facts showing that there is a genuine issue for trial."  *Sista*, 445 F.3d at 169.

## II.     McDermott's age discrimination claim fails as a matter of law.

### A.  Applicable legal standards

To prevail under the ADEA a plaintiff "must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action" and not just a contributing or motivating factor."  *Gross v. FBL Financial Services, Inc.,* --- U.S. ----, ----, 129 S.Ct. 2343, 2349, 2351 (2009); *Gorzynski*, 596 F.3d at 106.[3]  While *Gross* expressly declined to address whether the *McDonnell Douglas* framework is appropriate for ADEA claims, 129 S.Ct. at 2349 n.2, the Second Circuit continues to apply it.  *Gorzynski*, 596 F.3d at 106.

To establish a prima facie case under the ADEA, a plaintiff must show "(1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination."  *Gorzynski*, 596 F.3d at 106.  Age discrimination claims under State HRL are analyzed the same way.  *Id.* at n.6.

### B.  McDermott fails to show a causal relationship between his termination and his age

In support of his age discrimination claim, McDermott points to deposition testimony that shows sharp dissatisfaction with his job performance.  For example, Wambua stated:

---

[3] Judge Tatel in the D.C. Circuit recently held that public employees bringing claims under section 633a of the ADEA need merely show that age "was *a* factor" in the disputed decision.  *Ford v. Mabus*, No. 09-5041, --- F.3d ---, --- , 2010 WL 5060998, at *9 (D.C. Cir. 2010) (emphasis in original).  While this poses a lighter burden than the Supreme Court crafted for private employees in *Gross*, section 633a—and the effect of *Mabus*—is limited to employees of certain "federal agencies."  *See* 29 U.S.C.A. § 633a.  It is unlikely to apply to McDermott because he was not employed by a federal agency listed in section 633a.

> [ McDermott] needed to be reminded to go to meetings.  He needed to be asked
> over and over to do the same thing.  He had an inability to prioritize with respect
> to critical deadlines.  He didn't understand our business.  And when he did meet
> his deadlines, his work was insufficient, and those all issues that were true from
> the beginning of his tenure to the end of his tenure.

Wambua Dep. 32:22-33:12.  McDermott opines that "these comments reflect a general level of impatience, irritation and frustration."  Pl. Mem. Opp. Summ. J. at 20.  While that may be, they reflect no connection to his age whatsoever.  The record is simply devoid of any reference to his age, and the mere fact of irritation, without more, is insufficient to raise an inference of discrimination.

The circumstances in this case provide assurance that no age-based discrimination took place.  First, McDermott was replaced by a person in the same protected class as he.  *See Montanile v. Nat'l Broadcast Co.*, 211 F. Supp. 2d 481, 487 (S.D.N.Y. 2002), aff'd 57 Fed. Appx. 27 (2d Cir. 2003) ("That a plaintiff is replaced by another in the same protected class weighs heavily against the inference that she suffered discrimination."); *Umansky v. Masterpiece Intern. Ltd.*, No. 96 Civ. 2367(AGS), 1998 WL 433779, at *3 (S.D.N.Y. July 31, 1998) (same). Catie Marshall replaced McDermott at age 53, and while she was about ten years younger than McDermott,[4] she was still a member of the protected class.[5]

McDermott was hired and fired by the same people.  "[W]hen the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire. This is especially so when the firing has occurred only a short time after the hiring."  *Grady v. Affiliated Cent.*, 130 F.3d 553, 560 (2d Cir. 1997), *cert. denied* 525 U.S. 936 (1998).  The people who decided to terminate McDermott—Wambua and McConnell—were the same people responsible for hiring him, *compare* Pl.'s 56.1 Resp. ¶¶ 8-15 *with id.* ¶¶ 54-58, and McDermott was fired a mere four months after being hired.  *Id.* ¶¶ 3, 17.  Additionally, the people involved in hiring and firing McDermott were themselves in the protected class.  During McDermott's short tenure,

---

[4] The fact that a was replaced by a younger person may in some cases provide an inference of discrimination, *Carlton v. Mystic Transp., Inc.*, 202 F.3d 129, 135 (2d Cir. 2000), but not here where McDermott's replacement was herself a member of the protected age group.

[5] The ADEA applies to ages 40 and up.  *See* 29 U.S.C. § 631(a).  The relevant provisions of the State HRL apply to all employees over the age of eighteen, see N.Y. Exec. Law § 296(3-a)(a), and those of the City HRL have no specific age limitation.  *See* N.Y. City Admin. Code § 8-107(1).

McConnell was 57, Jahr was 62, and Wambua was 38 (making him protected under State HRL and City HRL but not yet protected under the ADEA).  *See* Pl's. 56.1Resp. ¶¶ 8-15; Def's 56.1¶¶ 8-15.  These facts defeat any inference of discrimination and lead unalterably to the conclusion that McDermott's termination was based on reasons other than age.

Finally McDermott testified that while at HDC, no one made any comments to him that he felt were offensive or derogatory because of his age.  McDermott Decl. at 73:1-4.  All of these factors defeat any inference of discrimination based on McDermott's age.  *See Baguer v. Spanish Broadcasting System, Inc.*, No. 04 Civ. 8393(RJS), 2010 WL 2813632, at *14 (S.D.N.Y. July 12, 2010).

### III.   Independent analysis under the City HRL compels the same result.

"[C]laims under the City HRL must be reviewed independently from and more liberally than their federal and state counterparts."  *Loeffler v. Staten Island University Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009) (citing *Williams v. NYCHA*, 61 A.D.3d 62, 66-69 (1st Dep't 2009)).  Indeed, the Local Civil Rights Restoration Act of 2005, N.Y.C. Local Law No. 85 (2005), notified courts that "*all* provisions of the City HRL require[] independent construction to accomplish the law's uniquely broad purposes."  *Williams*, 61 A.D.3d at 67.  Less has been said about what the independent analysis entails.  *See, e.g., Zhao v. Time, Inc.*, No. Civ. 8872 (PAC), 2010 WL 3377498, at *22 (S.D.N.Y. Aug. 24, 2010) ("just how far the 'floor' has been raised-remains unclear.").  It is clear, however, that the burden shifting analysis still applies, and "[n]othing in the 2005 revisions to the NYCHRL changed the standard for creating a disputed issue of material fact under Rule 56."  *Baguer*, 2010 WL 2813632, at *16.

In this case there is "no support for a different outcome for any of the plaintiffs' discrimination claims brought pursuant to the [City] HRL."  *Joseph v. Marco Polo Network, Inc.*, No. 09 Civ. 1597(DLC), 2010 WL 4513298, at *15 (S.D.N.Y. Nov. 10, 2010).   Having gone well beyond the facts that McDermott highlights in his brief to examine all facts mustered, and having given them the most generous reading, I conclude that McDermott has failed to raise an issue of disputed, material fact as to whether he was terminated as a result of either his age or disability.  *See Sista*, 445 F.3d at 169.

### IV.   HDC had legitimate, non-discriminatory reasons for terminating McDermott

Even had Plaintiff established a prima facie case of age or disability discrimination, his claims would still fail because HDC has articulated legitimate and non-discriminatory reasons

for his termination, and there is no proof that those reasons were pretextual. *Gorzynski*, 596 F.3d at 106 . As discussed above, the record indicates that McDermott's job performance suffered in a variety of specific ways that made him unsuitable for the position. Def's 56.1 ¶¶ 52-100. McDermott's replacement had more relevant experience as a public-sector employee; moreover, she was able to simultaneously fill the same communications position for HDC and the Department of Housing Preservation and Development, and thus provide significant cost savings to both entities. *See* Def's 56.1 ¶¶ 100-114. These are "legitimate, nondiscriminatory" reasons for HDC's decision to terminate McDermott. *See Gorzynski*, 596 F.3d at 106 .

CONCLUSION

For the foregoing reasons, HDC's motion for summary judgment is granted. The Clerk of the Court is directed to close this matter and remove it from my docket.

SO ORDERED.

New York, New York
January **, 2011

HAROLD BAER, JR.
United States District Judge

9